IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TABATHA L. KING                                                                                  PLAINTIFF

VS.                                      Civil No. 3:21-CV-03086-MEF

BAXTER COUNTY, ARKANSAS;
JOHN MONTGOMERY, Sheriff;
SERGEANT STEVEN GOODE; and DOES 1-10                              DEFENDANTS

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff, Tabitha King ("King"), worked as a jailer/matron of the Sheriff's Department of Baxter County, Arkansas ("Baxter County") from February 2018 until she was terminated by Sheriff John Montgomery ("Sheriff Montgomery") on April 23, 2021.  She brings this action against her former employer, Baxter County; against Sheriff Montgomery, in his individual and official capacity; against Steven Goode ("Goode"), a former sergeant for the Sheriff's Department, in his individual and official capacity; and against Does 1–10, in their individual and official capacities.

King alleges that she was the victim of sexual harassment and retaliation in violation of Title VII, 42 U.S.C. § 2000e-2; 42 U.S.C. § 1983; the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101, *et seq*.  She also asserts state-law claims against Goode and Baxter County for the tort of outrage and as the alleged victim of a criminal act, pursuant to Ark. Code Ann. § 16-118-107, and against Baxter County and Sheriff Montgomery for negligent entrustment.

Finally, King seeks a judgment declaring that the statutory cap on damages under the ACRA and the immunity provided by Ark. Code Ann. § 21-9-301 violate the Arkansas Constitution.

Defendant Goode, in his individual capacity, filed a Motion for Summary Judgment on October 30, 2023.[1]  (ECF Nos. 75-77).  Baxter County, Sheriff Montgomery, and Goode, in his official capacity (the "Separate Defendants"), also filed their Motion for Summary Judgment on that date.  (ECF Nos. 78-80).  King filed her Response in opposition to both motions for summary judgment on November 22, 2023.  (ECF Nos. 92-94).  With leave of Court, the Separate Defendants filed a Supplement in Support of Motion for Summary Judgment on December 8, 2023.  (ECF No. 99).  Defendant Goode, in his individual capacity, and the Separate Defendants filed Replies on December 8, 2023.  (ECF Nos. 100, 101).  The motions for summary judgment are ripe for decision.  For the reasons given below, the motions for summary judgment are GRANTED IN PART and DENIED IN PART.

## I.     PLAINTIFF'S VOLUNTARY DISMISSAL REQUESTS

As an initial matter, the Court addresses King's requests for dismissal of certain of her claims.  In her summary judgment response, King requests dismissal of Defendants Does 1–10, and she seeks dismissal *without prejudice* of her claims brought against Baxter County and Sheriff Montgomery for the tort of outrage and civil action by a crime victim.  Defendants do not oppose either request, but Baxter County and Sheriff Montgomery seek a dismissal *with prejudice* for the claims of outrage and civil action by a crime victim brought against them.

Rule 41(a)(2) dismissals, which apply once an answer or motion for summary judgment has been served, are contested dismissals that require a district court's approval and a court order.

---

1 Defendant Goode is represented by separate counsel on the claims brought against him in his individual capacity.

*Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1079 (8th Cir. 2017); Fed. R. Civ. P. 41(a)(2).  "Rule 41(a)(2)'s purpose 'is primarily to prevent voluntary dismissals which unfairly affect the other side.'"  *Id.* (quoting *Paulucci v. Duluth*, 826 F.2d 780, 782 (8th Cir. 1987)).  If the plaintiff either moves for dismissal without prejudice or fails to specify whether the request is for dismissal with or without prejudice, the matter is left to the discretion of the court.  *Beavers v. Bretherick*, 227 F. App'x 518, 520 (8th Cir. 2007).  Under some circumstances, the trial court may order that a Rule 41(a) dismissal be granted with prejudice.  *See, e.g., Witzman v. Gross*, 148 F.3d 988, 992 (8th Cir. 1998) (refusal to dismiss without prejudice not an abuse of discretion when defendant had expended considerable time and money defending suit, plaintiff had not been diligent, plaintiff's claims were precluded by law, and defendant had moved for summary judgment); *Metro. Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co.*, 999 F.2d 1257, 1263 (8th Cir. 1993) (observing that if a defendant demonstrated a valid defense to a plaintiff's claims, a district court would abuse its discretion by granting a plaintiff's motion to voluntarily dismiss without prejudice).

In exercising its discretion to determine whether to grant a motion to voluntarily dismiss without prejudice under Fed. R. Civ. P. 41(a)(2), a district court should consider the following four factors: (1) the defendant's effort and the expense involved in preparing for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; (3) insufficient explanation of the need to take a dismissal; and (4) the fact that a motion for summary judgment has been filed by the defendant.  *Paulucci*, 826 F.2d at 783; *Adams*, 863 F.3d at 1080 (noting that in determining a contested motion for voluntary dismissal under Rule 41(a)(2), a district court should consider factors such as whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants).

3

Here, the Defendants have expended effort and expense in preparing for trial, King has not offered any explanation of the need to take a dismissal, and the Defendants have filed motions for summary judgment.  Considering these factors, King's request to dismiss the Defendant Does 1–10 is GRANTED, but with prejudice.  King never identified and moved to substitute anyone in place of a Defendant Doe in this matter.  King's request to dismiss the state-law claims for the tort of outrage and civil action by a crime victim brought against Baxter County and Sheriff Montgomery is also GRANTED, but these claims will also be dismissed with prejudice.

In light of the foregoing rulings, the claims that remain for this Court's consideration are as follows: the Title VII and ACRA claims of sexual harassment and retaliation against Baxter County; the § 1983 claims for sexual harassment against Sheriff Montgomery and Goode; the state-law negligent entrustment claim against Baxter County and Sheriff Montgomery; the state-law claims against Goode for the tort of outrage and civil action by a crime victim; and the claims for declaratory judgment on the statutory cap on damages under the ACRA and the immunity provided by Ark. Code Ann. § 21-9-301.

## II.     FACTUAL BACKGROUND

The following facts are undisputed and taken from Defendants' statements of undisputed facts (ECF Nos. 77, 80), and King's responses to Defendants' statements of undisputed facts (ECF No. 93), unless otherwise specified by citation.

King began working as a jailer/matron at the Baxter County Sheriff's Department ("BCSD") in 2018.  She also worked as a volunteer reserve deputy sheriff, which allowed her to carry a badge and firearm.  Upon beginning her employment, King received a copy of Baxter County's general orders and its policies and procedures manual.  The manual contains a section prohibiting sexual harassment, which informs employees about the BCSD's anti-harassment

policy, prohibited activities, employees' responsibilities, and how to complain about harassment in the workplace.  (ECF No. 75-3 at 3, 6-7).  It further contains a disciplinary policy that provides a graduated discipline system for improper conduct, and it provides that misconduct or gross misconduct may warrant higher levels of discipline in the discretion of the Sheriff or Chief Deputy.  (ECF No. 75-1 at 18, 20).  Misconduct includes making a false report or giving untruthful or incomplete answers to questions or inquiries made by a supervisor, and failing to properly care for and use Sheriff's Office equipment.

### The Alleged Sexual Assault

When King was hired, Goode had been working at the BCSD since 2017.  He started part-time as a jailer but went full-time in 2018, and at some point, he attained the rank of corporal, and then sergeant.  (ECF No. 93-4 at 3).  King alleges that in spring 2019, she was assisting Goode, then a corporal, with moving inmate mats to a storage room above the jail.  She said once they were inside the room Goode pushed her to the ground onto her knees and forced his penis into her mouth; she pushed him off, and he told her she better keep her mouth shut or he would find a way to have her fired and said that no one would believe her.  She said this all happened in a few seconds, that she did not yell for help, and she did report that she had been sexually assaulted.  King says she did not report this event "because of fear" and because she felt no one would believe her.

Goode testified in discovery that sometime after he had begun working full time, he and King had a "romantic or physical relationship."  (ECF No. 93-4 at 3).  He also said it was *not* a sexual relationship, that he had *not* engaged in any sexual contact with her, and that she had never performed oral sex upon him.  (*Id.* at 4).  He said they flirted and had open and trusting conversations.  He did not recall if they had engaged in "sexting."  (*Id.*).  He said many times when

they were leaving the tower, King would grab him in the stairwell and want to kiss, but he never initiated it.  (*Id.* at 8, 10).  He admitted that they kissed in the storage room above the jail where the inmate mats were kept.  (*Id.* at 8).

Goode acknowledged that there had been a sexual encounter in the storage room above the jail, but he said it occurred in the fall of 2019, and that King initiated it.  (ECF No. 93-4 at 8-9).  As Goode described it, he asked King to assist him with storing inmate mats while other employees were occupied, and, when he and King entered the storage room, she implied that she was not there to help store the mats, said "you know what I want," went toward Goode, and "temptation took over[.]"  (*Id.* at 9).  Goode said they began kissing, touching, and that King unfastened his belt and pants, grabbed his penis, and asked him to "take her on the mats[,]" but they were interrupted when Goode heard the voice of another jailer asking if they needed any help.  (*Id.*).

### *Texting and Rumors About Inappropriate Photographs*

Sometime between August and December 2019, Goode and King texted each other frequently, and their texts included photographs.  King said there were "a lot" of photos, but she saved only three.  One of the photos depicts Goode's penis and is followed by the question, "U want," to which King responded, "Why" and "Stop it."  Goode then replied, "Darn."  (ECF No. No. 75-5 at 9).  Two other photographs texted to King depict Goode in his underwear, and one includes responses from King saying, "Why" and "Just why."  When Goode asked, "What," King responded, "Makes me mad."  (*Id.* at 10).

At some point, King also sent Goode a photograph depicting her with her blouse unbuttoned.  (ECF No. 77 at 5).  Goode also sent King a text message about "how much fun we could have if we all got together," to which King responded, "Did you just say three some !!!"  (ECF No. 77 at 4).

6

According to King, she went to another employee, Ethan Raymond, and asked if there was a way to block photos without blocking text messages from the sender.  She says rumors about photographs then began to circulate, and eventually Dawn Dunford approached her about them and, after that, got the photographs from King by text and said that she would report them to the Division Commander, Lieutenant Brad Lewis.  (ECF No.75-2 at 19-20).  The summary judgment record reflects that Ethan Raymond indicated that in 2019 he learned of rumors involving inappropriate photographs or text messages sent by Steven Goode to Tabitha King.  (ECF No. 75-15 at 39).  Raymond said that Dawn Dunford showed him the photographs at some point in 2020, and the photographs were on Dunford's phone.  Raymond described his and Dunford's demeanor as "disgusted."  (*Id*.).

In her investigatory interview on May 7, 2021, Dunford reported that King had shown her the photographs 10 to 12 months earlier and implied that she had received them unsolicited.  Dunford stated that she was shocked and told King she needed to file a complaint.  Dunford subsequently received the photographs from King by text.  (*Id*. at 13).  The summary judgment record reflects that Lieutenant Lewis learned of the photographs from Dawn Dunford at about the same time.  (*Id.* at 2).

### *King Asks Captain Jeff Lewis About How to Handle Employee Harassment*

King also visited Captain Jeff Lewis sometime between the end of 2019 and early 2020, and she asked—as "Tabby to Jeff" and not as "captain-and-jailer"—what to do if another employee at the BCSD was harassing her.[2]  According to both King and Captain Lewis, during this meeting Captain Lewis told King that BCSD has written policies in place that prohibit harassment in the workplace; and if it was taking place, she had to report it so that it could be investigated.  (ECF

---

[2] Captain Jeff Lewis and Lieutenant Brad Lewis are brothers.

No. 101-1 at 6-7; ECF No. 75-2 at 19-20).  Captain Lewis says he told her she was required to report it and asked if she wanted to make a complaint; King answered "no."  (ECF No. 101-1 at 6).  At her grievance hearing before the Baxter County Quorum Court, King testified that she told Captain Lewis that "someone was sending [her] inappropriate pictures of their penis and their face," and that she told the person, "Please stop.  This is making me mad.  Why are you doing this?"  King testified in her deposition that she did not identify anyone as a harasser to Captain Lewis in this meeting.  (ECF No. 75-2 at 19-20).

### Sheriff Montgomery's Response to Rumors About the Photographs

Sheriff Montgomery became aware of the rumors that King and Goode had sent inappropriate photos "back and forth" in late December 2019 or early January 2020.  (ECF No. 80-1 at 7).  He addressed the issue with Goode, advising him that if it was true, it needed to stop immediately.  The Sheriff provided an affidavit in which he states that, within the same week, Lieutenant Lewis also advised him that Goode had sent photographs to King.  The Sheriff told Lieutenant Lewis that he had already addressed the issue with Goode.  (ECF No. 80 at 7).  After this point, King received no further photographs from Goode.  She does claim that he continued to harass her.  (ECF No. 93-1 at 2).

### Personnel Matters From 2019 to 2021 that King Claims Were Retaliatory

On December 18, 2019, King verbally asked Corporal Ethan Raymond and Lieutenant Brad Lewis for placement on a different rotation or shift.  King did not formally request a shift change in writing, and Lieutenant Lewis denied the request, saying "[w]e put you where we need you."  (ECF No. 77 at 5).

King alleges that in October of 2020, Goode denied her request to leave work to go to the hospital "due to an urgent issue with a pending pregnancy."  The summary judgment record reflects

that King was diagnosed with having a painful, irregular menstrual cycle, and she was discharged that night with instructions to follow up with her primary care provider.  (ECF No. 77 at 7).

In March 2021, Goode wrote a performance evaluation of King, noting that she was "proficient in performing her job in the jail," but he "would like [her] to listen to supervisors when instructed to do an assignment without arguing."[3]  Goode also noted that "if there is an issue about getting to work on time[,] let supervisors know as soon as possible."  (ECF No. 77 at 7-8).  King's annual performance evaluation the following month graded her at "below expectations" for reporting to work on time and noted that she had multiple instances of arguing with supervisors, but she was ultimately evaluated as "meeting expectations" and was recommended for a merit pay increase.  (*Id*. at 8).  King approached Captain Lewis about the negative aspects of the evaluation, and she was permitted to write a response to the evaluation on the form, and did so, disputing that she ever argued with supervisors.  (*Id*.).

Sometime in 2021, King notified the nurse at the BCSD that she was taking anti-anxiety medication.  As a result, her gun and badge privileges as a volunteer reserve deputy were suspended, pending receipt of a doctor's note stating that it was safe for her to carry a gun while on the medication.  King provided a note from her doctor the following day, and her privileges were restored without any loss in pay.  (ECF No. 77 at 8).

### King's Misuse of County Property, Dishonesty About It, and Termination

On April 14, 2021, King was in "D Pod" of the jail when another jailer, Dawn Laurie, entered the pod behind King and lightly pushed her from behind.  King turned around and lightly

---

[3] King previously had received verbal coaching from Sergeant Tony Beck for initially refusing to perform work assigned to her by Corporal Raymond, and then yelling at Corporal Raymond that she "want[ed] off [his] fucking shift."  (ECF No. 77 at 5).  Corporal Raymond had noted in an annual performance evaluation that King "is, at times, insubordinate to her supervisors and has been written up on such in the past."  (*Id*.).

pushed Laurie back, began to walk away, and then turned back and re-entered the pod. King then grabbed the electronic device Laurie was holding (known by BCSD staff as a "Guardian") and she tossed it across the room onto the floor, where it broke apart. King picked up the parts of the Guardian and reassembled it. She then took a pen from Laurie's shirt pocket and threw it to the ground. Laurie later reported the incident, and she and King subsequently gave written statements about it. (ECF No. 77 at 8-9).

On April 19, 2021, Laurie submitted a statement that she entered "D Pod," approached King from behind, and said "boo," at which point King turned around, took the Guardian from her, and threw it across the pod, where it came apart. Laurie also reported that King told her she would regret it if she told anyone what happened. (ECF No. 77 at 9-10). King submitted a statement, saying Laurie snuck up behind her, squeezed her ribs, and yelled to scare her. King stated that she reacted by jumping, hitting Laurie's hand in the process, and knocking the Guardian device to the ground. (*Id*. at 10). Video footage of the Guardian incident was reviewed by Sheriff Montgomery and Division Commander, Lieutenant Brad Lewis. After determining that King's written statement was not consistent with what the video showed about the incident, Sheriff Montgomery decided to terminate King's employment pursuant to his no-tolerance policy against employees lying during investigations. (*Id*.).

### *King's Reports of Harassment and Sexual Assault*

Sheriff Montgomery terminated King on April 23, 2021. Later that day, she met with Sheriff Montgomery and indicated, for the first time, that she had been sexually harassed while employed at BCSD. (ECF No. 77 at 10). The next day, King went to Sergeant Jackie Stinnett, with the Criminal Investigations Division of the Arkansas State Police, and she reported that Goode had sent her nude photographs in 2019. King showed Sergeant Stinnett screenshots of the

photographs on her cell phone, but she refused to let him download a copy of the photographs and other text messages between her and Goode.  King did not report that Goode (or anyone else) had sexually assaulted her.  (*Id*. at 10-11).  Two weeks later, King returned to Sgt. Stinnett's office to again discuss the photographs.  Sgt. Stinnett informed King that ASP was not investigating the complaint as a criminal matter, and he told her she could report it to the prosecuting attorney.  A month later, King's attorney called Sergeant Stinnett and stated that Goode had raped King.  (*Id*. at 11).

King filed a grievance regarding her termination.  (ECF No. 77 at 11).  She explained that the discrepancies in her written report of the "Guardian incident" were excusable because she prefaced the report with "I don't recall," and she claimed she was on medication due to the stress of working with a superior who had been sexually harassing her.  Her written grievance made no mention of rape or sexual assault, and she did not name the superior she claimed was sexually harassing her.  (*Id*. at 11-12).  Baxter County opened an investigation into the report of sexual harassment and retaliation, interviewing 70 employees.  Of those employees interviewed, 14 indicated firsthand knowledge of King's receipt of inappropriate photographs.  (*Id*. at 12).

The Baxter County Quorum Court held a hearing on King's grievance and heard from Sheriff Montgomery, Dawn Laurie, and King.  (ECF No. 77 at 13).  During her testimony, King maintained her version of the incident, stating that she reacted, hit Laurie's hand, and the device "went flying."  King also testified that when she met with Sheriff Montgomery on the day of her termination, she told him she had reported sexual harassment and retaliation two weeks prior.  She did not testify that she had been sexually assaulted by a Baxter County employee.  And when asked if she had ever had sexual contact with Goode, she testified "no."  The quorum court upheld King's termination.  (*Id*.).

King filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 28, 2021, and on September 2, 2021, the EEOC issued its Dismissal and Notice of Rights.  (ECF No. 2 at 13-17; ECF No. 77 at 14).  King then filed her initial Complaint in this matter on December 15, 2021.  (ECF No. 2).

### III.    LEGAL STANDARD

The standard for summary judgment is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995).  This is a "threshold inquiry of ... whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A fact is "material" only when its resolution affects the outcome of the case.  *Id.* at 248.  A dispute is "genuine" if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id.* at 252.  The Court must consider all the evidence, and all reasonable inferences that arise from the evidence, in a light most favorable to the non-moving party.  *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006).  "In considering a motion for summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 943-44 (8th Cir. 2008).

## IV.     DISCUSSION

### A.     Title VII and ACRA Gender Discrimination and Retaliation Claims

Title VII "provides remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342, (2013). Sexual harassment in the workplace is a form of discriminatory conduct that is prohibited not only by Title VII, *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 72-73 (1986), but also by the Arkansas Civil Rights Act ("ACRA"), *Island v. Buena Vista Resort*, 352 Ark. 548, 556-59 (2003). King's sexual harassment claims under both Title VII and the ACRA are identical, and she does not contend that state law provides her any rights that she does not have under Title VII. Further, the Arkansas Supreme Court looks to interpretations of Title VII as persuasive authority for interpreting the ACRA. *See Island*, 352 Ark. at 556–57; *see also* Ark. Code § 16–123–105(c); *Crone v. United Parcel Service, Inc.*, 301 F.3d 942, 945 (8th Cir. 2002). For these reasons, the Court considers King's Title VII and ACRA claims together.

As an initial matter, the Court notes that the Separate Defendants, Baxter County, Sheriff Montgomery, in his individual and official capacities, and Goode, in his official capacity, assert that King's Title VII claims are untimely because she failed to file her EEOC charge of discrimination within 180 days from the date of the discriminatory acts that she complains of, and because she failed to file this lawsuit within 90 days after receipt of the electronic notice from the EEOC dismissing her charge of discrimination. The Defendants also assert that King's ACRA claims are time barred.[4] On December 29, 2023, this Court ruled that the Separate Defendants would not be granted leave to amend their answer to belatedly assert the statute of limitations as

---

4 In his individual capacity, Goode also asserts that King's ACRA claim, to the extent she asserts such a claim against him in his individual capacity, is time barred. As the Court has noted, *infra*, King has expressly stated that she does not bring such a claim against Goode.

an affirmative defense because they had not demonstrated the requisite diligence. (ECF No. 105). The Court noted that the facts underpinning the Separate Defendants' assertions of the defense were available at the outset of the case, and they failed to adequately explain why they did not seek leave to amend their answer to assert the affirmative defense by the scheduled amendment deadline of August 24, 2022. (*Id.* at 5–8). For the reasons stated in that Order, the Court will not consider the Separate Defendants' affirmative defense of untimeliness asserted in their summary judgment motion. Defendant Goode, in his individual capacity, also failed to plead the statute of limitations as an affirmative defense, and the Court will likewise not consider it as to King's claims against him.

To survive a motion for summary judgment on a Title VII claim, a plaintiff must either offer direct evidence of discrimination or create an inference of discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014); *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). King has provided no direct evidence of discrimination on any of her claims, so she must create an inference of discrimination under the *McDonnell Douglas* burden-shifting framework. To create an inference of discrimination under *McDonnell Douglas*, King must first make a *prima facie* case of discrimination. *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996).

### 1.   Hostile Environment Sexual Harassment

There are two types of sexual harassment claims under Title VII: (1) quid pro quo harassment, "where an employee's submission to or rejection of a supervisor's unwelcome sexual advances is used as the basis for employment decisions"; and (2) "hostile work environment harassment, where 'the workplace is permeated with discriminatory intimidation, ridicule, and

insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 908 (8th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Sexual harassment is quid pro quo if a tangible employment action follows the employee's refusals to submit to a supervisor's sexual demands." *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1026-27 (8th Cir. 2004) (citing *Burlington Industries v. Ellerth*, 524 U.S. 742, 752 (1998)). In this case, King does not bring a quid pro quo sexual harassment claim because she does not show that she rejected any sexual advances made by Goode and suffered a tangible employment action as a result. The physical incident with Goode in the storage room above the jail allegedly occurred in spring 2019, and the texting of inappropriate photographs was in fall 2019, more than a year before King's termination in April 2021. Further, she was not terminated by Goode, but by Sheriff Montgomery following an unrelated incident. Therefore, her sexual harassment claim must be analyzed as a hostile work environment claim.

To establish a *prima facie* claim for hostile work environment harassment by non-supervisory coworkers, a plaintiff must establish: (1) membership in a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Carter v. Chrysler Corp.,* 173 F.3d 693, 700 (8th Cir. 1999). To state a claim of hostile work environment harassment involving a supervisor, the plaintiff must establish only the first four factors. *See Anderson v. Family Dollar Stores of Ark.*, 579 F.3d 858, 862 (8th Cir. 2009). Baxter County does not dispute that King has demonstrated the first and third factors, i.e., that she is a member of a protected group and there is a causal nexus

between the alleged harassment and her membership in the protected group, but Baxter County argues that Goode cannot establish the second and fourth elements of her claim.  (ECF No. 79 at 9-13).

### a.      Unwelcome Conduct

Regarding the second element—whether King was subjected to unwelcome harassment by Goode—Baxer County asserts that King "has not presented evidence that the actions of Goode were unwelcome."  (ECF No. 79 at 9-10).  Baxter County points to the following undisputed facts: King did not contemporaneously complain of the harassing conduct; she sent Goode a photograph in which she is depicted with her blouse unbuttoned; and she replied to one of Goode's suggestive texts in an equally suggestive manner, exclaiming "Did you just say threesome!!!"  Baxter County also suggests that the substantial increase in text messages that King and Goode exchanged in the fall of 2019 (over 1,100 from October through December 2019, none of which have been produced by either party) is further evidence that King welcomed Goode's conduct.  While these facts are relevant to the issue of whether Goode's conduct was "unwelcome" to King, they are not dispositive here on summary judgment.  "[W]hether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact[.]"  *Meritor*, 477 U.S. at 68.  Even "voluntary sexual activity may ... be unwelcome harassment[.]"  *Crutcher-Sanchez v. County of Dakota*, 687 F.3d 979, 985 (8th Cir. 2012); s*ee also Meritor*, 477 U.S. at 68–69 (sex-related conduct that is voluntary, "in the sense that the complainant was not forced to participate against her will," may nevertheless be unwelcome).

There is evidence in the summary judgment record to support King's assertion of unwelcome harassment.  It is undisputed that Goode sent photographs to King in the fall of 2019, one of which depicts Goode's penis, followed by the question "U want," to which King responded

"Why" and "Stop it."  (ECF No. 94-3 at 10).  Two other photographs texted to King depict Goode in his underwear, and one includes responses from King saying, "Why" and "Just why."  When Goode asked, "What," King responded, "Makes me mad."  (*Id*. at 10).  According to Dawn Dunford, when she obtained screenshots of these photographs from King in 2020, King implied to Dunford that the photographs were unsolicited.  (ECF No. 75-15 at 13).  Conduct is "unwelcome" when the employee neither solicited it nor invited it and regarded it as undesirable or offensive. *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1108 (8th Cir. 1998); *Moylan v. Maries Cnty.*, 792 F.2d 746, 749 (8th Cir. 1986) (noting conduct is "unwelcome" where it is "uninvited and offensive").

King further alleges that in spring 2019, while she was assisting Goode in a storage room above the jail, Goode pushed her to "her knees and forced his penis into her mouth" until she "pushed him" away.  (ECF No. 28 at 2).  King elaborated on this encounter in more detail in her deposition testimony, asserting that Goode used a pressure point to make her fall to her knees, forcefully opened her jaw, placed his penis in her mouth, and started pulling her hair back and forth.  According to King's testimony, after she pulled away, coughing and spitting, Goode started threatening her.  (ECF No. 75-2 at 13-14).  In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the non-moving party.  *Nitsche*, 446 F.3d at 845.  In that light, the Court cannot say that Baxter County carried its burden on the issue of unwelcome conduct.  *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986) ("It is the movant's initial burden on summary judgment to demonstrate the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any.")

### b. Severe or Pervasive Harassment

For the fourth element—whether Goode's conduct affected a term, condition, or privilege of King's employment—there must be a showing that the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *See Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003) (citing *Meritor*, 477 U.S. at 67 (citation and quotation omitted)). To be actionable, the "harassment must have been both objectively and subjectively offensive[.]" *Nichols v. Tri-Nat'l Logistics, Inc.*, 809 F.3d 981, 985 (8th Cir. 2016). "'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.'" *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In determining whether alleged harassment is objectively offensive, courts consider all the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (quoting *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1158 (8th Cir. 1999), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc)).

Baxter County asserts that King "has not presented evidence that the alleged actions were severe or pervasive." (ECF No. 79 at 10-13). Considering the alleged sexual assault separately from the inappropriate photographs, Baxter County first contends that the 2019 assault is not substantiated by any evidence in the record other than King's allegations and testimony. Baxter County then contends that the photographs are isolated incidents that are insufficient to demonstrate the requisite severity or pervasiveness. As an initial matter, we do not disaggregate

the incidents of sexual harassment when considering the severity or pervasiveness prong.  A "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'" for purposes of Title VII.  *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).  The objective severity of harassment is to be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *Burns v. McGregor Elec. Indus., Inc.*, 989 F.2d 959, 962 n. 3 (8th Cir.1993).  Accordingly, once there is evidence of improper conduct and subjective offense, the determination of "[w]hether that conduct rose to the level of sexual harassment is usually a factual determination for the jury."  *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 456 (8th Cir. 2001); *see also Howard v. Burns Bros.*, 149 F.3d 835, 840 (8th Cir. 1998) (noting judgment as a matter of law is appropriate only when there is a complete absence of probative facts).

As a starting point then, King's testimony of the sexual encounter above the jail in 2019 must be accepted as true, even if the summary judgment record evinces questions about her credibility.  Even considering this encounter in isolation from the photographs and the other instances of touching and kissing that King and Goode both acknowledge occurred in stairwells and other blind spots in the jail, the fact that a sexual encounter occurred above the jail in 2019 is substantiated by Goode's admission that he and King had a sexual encounter in the storage room above the jail in 2019.  Details about whether the encounter was an assault, who initiated the encounter, whether it occurred in spring or fall, and the precise details of the alleged sexual act are disputed by the parties, but those are questions that go to the weight and credibility of the evidence, which this Court may not decide on summary judgment.  *See Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 944 (8th Cir. 2008) ("In considering a motion for

summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.").

Moreover, the Court is not persuaded by Baxter County's argument that Eighth Circuit precedent permits the Court to disregard King's deposition testimony about the alleged encounter because that testimony directly conflicts with her prior grievance-hearing testimony that she never had any sexual contact with Goode. *Frevert v. Ford Motor Co.*, 614 F.3d 466, 474 (8th Cir. 2010) does not stand for the proposition that a court is free to disregard a plaintiff's allegations and testimony simply because they are contradicted by other prior testimony given by the plaintiff. In *Frevert*, the district court granted Ford Motor Company's summary judgment motion, disregarding Frevert's affidavit filed in opposition to the motion. It disregarded the affidavit not because it was inconsistent with previous testimony, but because the affidavit attempted to save a legally and factually deficient claim by adding critical facts that were not in the complaint or discovery. The absence of those facts from the complaint and discovery was the premise of Ford's summary judgment motion. In contrast, King presented allegations concerning the alleged encounter above the jail in her First Amended Complaint. Her inconsistencies, and ultimately her credibility, are matters for the trier of fact.

The Court further notes that sexual assault "is inarguably a severe form of sexual harassment[.]" *Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 743 (10th Cir. 2014). Even a single incident of harassment, if sufficiently severe, may be actionable. *Moring v. Arkansas Dep't of Correction*, 243 F.3d 452, 456-57 (8th Cir. 2001). Combined with King's additional testimony about touchings, and the undisputed facts concerning the photographs and King's responses to them, a reasonable person could conclude that Goode's conduct was not merely unpleasant or rude, but was also objectively and subjectively offensive, extreme, and severe.

King has presented evidence sufficient to create a genuine dispute of material fact as to whether Goode's conduct created a hostile working environment due to sexual harassment. Summary judgment is not designed to weed out dubious claims, but only to eliminate those claims with no basis in material fact. *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir. 1987).

### c.    Vicarious Liability

Having found that King has established a *prima facie* case of sexual harassment, the Court must address Baxter County's assertion that it is not vicariously liable for Goode's conduct because he was not King's "supervisor" for purposes of Title VII and the County was not negligent.  As previously noted, if Goode was not King's "supervisor" in this sense, then King must show that Baxter County knew or should have known of the harassment and failed to take proper action.  *See Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006).  If, on the other hand, Goode was King's "supervisor" and the harassment resulted in a tangible employment action, Baxter County will be vicariously liable for the harassment if the trier of fact finds in favor of King.  *See Vance v. Ball State University*, 570 U.S. 421, 428-29 (2013) (stating the general rule). If Goode was King's "supervisor," but the harassment did not result in a tangible employment action, then Baxter County will be vicariously liable for the harassment if it cannot satisfy the affirmative defense described in *Ellerth*, 524 U.S. 742 at 765 and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998).  *Vance*, 570 U.S. at 428-29.

Baxter County asserts that it is "undisputed" that Goode was not King's supervisor for purposes of vicarious liability because Goode did not have the authority to take tangible employment action against her.  (ECF No. 101 at 7).  As support for this assertion, Baxter County refers only to its Statement of Undisputed Material Facts, wherein the County states that "Goode did not have the authority to hire, fire, promote, or reassign Plaintiff to significantly different

duties." (ECF No. 80, ¶ 2).  The Statement of Undisputed Material Facts, in turn, refers to Sheriff Montgomery's Affidavit, which supports Baxter County's proposed statement of undisputed fact; but King appears to have disputed this fact.  In her Response to County Defendants' Statements, she states, "Denied that Goode did not have control over the Plaintiff as her Supervisor when she worked under his supervision and on his shift."  King's response refers to her declaration, in which she simply notes that Goode was her supervisor (ECF No. 93-1 at 2), and to Sheriff Montgomery's deposition testimony in which he stated, "I don't know that I would call Steven Goode [King's] 'boss.'  He may have been her supervisor, but I certainly wouldn't call him her boss."  Sheriff Montgomery added that Goode, as a sergeant, had "limited supervisory ... authority[,]" that he could "change schedules, ... recommend discipline to a higher authority, but there's ... very little, they can't affect their pay, they can't affect anything like that, so I don't know that I would call that her boss."  (ECF No. 93-2 at 5).  The parties cite to no other materials in the summary judgment record to resolve the issue of whether Goode was King's supervisor for purposes of Title VII, and the record is insufficiently developed for the Court to conclude that the County met its summary judgment burden on this point.

A "supervisor" under Title VII is an employee whom "the employer has empowered ... to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance*, 570 U.S. at 431 (quoting *Ellerth*, 524 U.S. at 761).  An employee need not be empowered to take such tangible employment actions directly to qualify as a supervisor.  A manager who works closely with his or her subordinates and who has the power to recommend or otherwise substantially influence tangible employment actions, and who can thus indirectly effectuate them, also qualifies

22

as a "supervisor" under Title VII. *Vance*, 570 U.S. at 446-47 (discussing management structure in which the decisionmaker relies on recommendations of other workers who interact with the affected employee).

An employer who "concentrates all decision[-]making authority in a few individuals, ... likely will not isolate itself from heightened liability under *Faragher* and *Ellerth*." *Vance*, 570 U.S. at 446–47. This is so, the Court said, because when the individuals vested with actual decision-making power do not interact regularly with the employee, they will "have a limited ability to exercise independent discretion when making decisions and will likely rely on other workers who regularly interact with the affected employee.  Under those circumstances, the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose recommendations it relies." *Id*.

The deposition testimony of Sheriff Montgomery to which Baxter County directs the Court is less than clear about Goode's actual authority as King's immediate superior.  He testified that Goode had the power to recommend discipline of his subordinates, and the record further reflects that Goode submitted a performance review of King that was considered by higher supervisors as part of her annual evaluation and determination about whether she merited a pay raise.  (ECF No. 80 at 4-5).  Further, the County's disciplinary policy states that "the level and particular type of disciplinary action imposed will be within the discretion of the Sheriff or Chief Deputy, *after consultation with the Division Commander or immediate supervisor of the employee in question*." (ECF No. 93 at 37, ¶ 13) (emphasis supplied). Goode was indisputably King's immediate supervisor, but the level of his influence over disciplinary and economic outcomes is unclear and is relevant to the issue of liability. *See Vance*, 570 U.S. at 439-40.

The Court concludes that the summary judgment record is insufficiently developed on this issue, and it exercises its discretion to deny summary judgment so that the record can be more fully developed at trial. *See Roberts v. Browning*, 610 F.2d 528, 536 (8th Cir. 1979) ("However, even if a district judge feels that summary judgment in a given case is technically proper, sound judicial policy and the proper exercise of judicial discretion may prompt him to deny the motion and permit the case to be developed fully at trial. The ultimate legal rights of the movant can always be protected in the course of or even after trial."); *Andrew v. Clark*, 561 F.3d 261, 271 (4th Cir.2009); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2728 (4th Ed.) (collecting cases).

### 2.    Retaliation

King alleges that her employment was terminated in retaliation for engaging in protected activity. More specifically, she alleges that "she filed reports about being assaulted, reported the disparate treatment received thereafter, and was terminated within 8 days of filing yet another report in 2021." (ECF No. 28, ¶ 31).

To survive a motion for summary judgment on a retaliation claim, a plaintiff must offer direct evidence of retaliation or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework. *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016). Direct evidence in this context is not the converse of circumstantial evidence; rather, it refers to the causal strength of the proof. *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). The plaintiff's ultimate burden in a Title VII retaliation case is to prove that an impermissible "desire to retaliate was the but-for cause of the adverse employment action." *Nassar*, 570 U.S. at 352 (rejecting the more lenient "motivating factor" standard that applies to Title VII discrimination claims); *see also Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739–40 (8th Cir. 2017). The

*McDonnell Douglas* burden-shifting analysis applies even when the applicable standard of proof requires a showing of but-for causation. *Id.* at 740 (citing *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 888 (8th Cir. 2015)).

Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a *prima facie* case. *Donathan*, 861 F.3d at 740. She must demonstrate that she participated in protected conduct and suffered an adverse employment action. *Id.* (citing *Musolf v. J.C. Penney Co.*, 773 F.3d 916, 918 (8th Cir. 2014)). She must also demonstrate a causal connection between the protected conduct and the adverse employment action. *Donathan*, 861 F.3d at 740. A plaintiff's burden at this stage is not difficult. *Id.*; *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015); *Musolf*, 773 F.3d at 919.

If King makes the requisite showing, the burden shifts to Baxter County, requiring it to articulate a legitimate, non-retaliatory reason for King's termination. *Torgerson*, 643 F.3d at 1046. If Baxter County articulates a legitimate reason for the adverse employment action, King may create a triable question as to retaliation by showing that Baxter County's articulated reason is "not the true reason" for the adverse action. *Donathan*, 861 F.3d at 740. On a fully developed summary judgment record, this final step of the burden-shifting analysis merges with the ultimate burden of proof which always remains on the plaintiff. *Id.* (citing *Torgerson*, 643 F.3d at 1046).

Baxter County does not dispute that King's termination constituted a material adverse action, and the Court finds this is the only material adverse action supported by the summary judgment record. *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804-05 (8th Cir. 2013) (noting an adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including termination, cuts in pay or benefits, and changes that affect an employee's future career prospects). The summary judgment record

shows that none of Goode's other alleged retaliatory actions—that Goode would not let King change shifts, that he refused to let her leave work to go to the hospital for what she thought was a medical emergency, that he wrote negative things about her attitude in a performance evaluation, and that her badge and gun privileges were temporarily suspended—materially and adversely affected the terms and conditions of King's employment.

Baxter County contends that King cannot make a *prima facie* showing for two reasons. First, the County asserts that the summary judgment record shows that King did not engage in protected activity because she only discussed harassing photographs with a co-worker, Dawn Dunford, in 2019. Noting King's inconsistent testimony about reporting harassment, the County does not address her alleged reports of sexual harassment and assault to Captain Lewis in 2021, nor the effect, if any, of Sheriff Montgomery's awareness of rumors about the exchange of photographs in the fall of 2019. The Court will assume, for purposes of summary judgment only, that King has met the minimal burden at this stage of the analysis. *Geithner*, 776 F.3d at 540 ("[T]he threshold of proof necessary to establish a *prima facie* case is minimal.").

Baxter County also asserts that King has not shown a causal connection between the adverse action and any protected activity. In her response, King asserts that she was terminated a week after she reported harassment to Captain Lewis. By this assertion, King suggests that the temporal proximity of her alleged report to Captain Lewis and her termination by Sheriff Montgomery satisfies her minimal burden at this stage. *See Geithner*, 776 F.3d at 541 ("Proximity alone can be enough to establish causation for a *prima facie* case."). The Court finds that King has done so, and the burden has shifted to the County to demonstrate a legitimate, non-retaliatory reason for King's termination. The Court also finds that the County has articulated a legitimate reason for terminating King's employment—specifically, dishonesty and deliberately abusing

county property, as outlined in Sheriff Montgomery's Affidavit and King's Notice of Termination of Employment, and this is further supported by the surveillance video of the incident. (ECF No. 80-1 at 5-6; ECF No. 80-2 at 1).

The remaining issue is whether King has established a genuine dispute of material fact about whether the reasons for her termination were pretextual. There are at least two ways a plaintiff may demonstrate a material question of fact about pretext: indirectly, by showing the proffered explanation has no basis in fact; or directly, by persuading the court that a prohibited reason more likely motivated the employer. *Geithner*, 776 F.3d at 540. Either showing requires more substantial evidence than it takes to make a prima facie case. *Yearns v. Koss Constr. Co.*, 964 F.3d 671, 675 (8th Cir. 2020). On the summary judgment record before it, the Court concludes that King has not made the requisite showing that Baxter County was motivated by retaliation or that her termination had no basis in fact. Although she notes that her termination occurred within eight days of her alleged report to Captain Lewis, timing alone is not enough to establish pretext, even if it can create an inference of retaliation for a plaintiff's prima facie case. *Id*. Further, King's declaration that she is "convinced" that Sheriff Montgomery knew of her alleged report of harassment and assault to Captain Lewis on April 15, 2021, is insufficient to create a genuine dispute of material fact on retaliatory motive. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). King "must show there is sufficient evidence to support a jury verdict in [her] favor." *Nat'l. Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. Here, King has not presented sufficient evidence of pretext to raise a genuine doubt about the legitimacy of the County's reason for terminating her.

Accordingly, summary judgment will be granted on King's claim of retaliation.

### B.        Negligent Entrustment

Separate Defendants Baxter County and Sheriff Montgomery argue that King has failed to support her claim of negligent entrustment with sufficient facts to withstand summary judgment, and that they are entitled to tort immunity pursuant to Ark. Code Ann. § 21-9-301(a) in any event. (ECF No. 79 at 32).  King focuses on the issue of immunity in his response and does not directly address the argument that he has offered insufficient facts to demonstrate a genuine issue of material fact.  She simply argues that "[t]he facts as alleged by the Plaintiff clearly establish questions of fact as to the County's and Sheriff Montgomery's negligent entrustment of Goode." (ECF No. 92 at 20).  But King's First Amended Complaint contains only conclusory allegations that Defendants were negligent in hiring, retaining, or training their management staff and could reasonably foresee harm, and King points to no specific facts in the summary judgment record to support those allegations.  Defendants properly pointed out the absence of facts to support King's claims, and it was incumbent on King to show that there were genuine issues of material fact to withstand summary judgment.  *See Anderson*, 477 U.S. at 256 (a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials but must set forth specific facts showing that there is a genuine issue for trial).  Unsupported, conclusory allegations from the complaint or otherwise are insufficient to avoid summary judgment.  *Weger v. City of Ladue*, 500 F.3d 710, 728 (8th Cir. 2007) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments."); *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) (noting it is not the district court's responsibility to sift through the record to see if, perhaps, there is an issue of fact).  King

has not demonstrated the existence of a genuine issue of material fact regarding negligent entrustment, and summary judgment will be granted on this claim.

### C.    Claims Against Individual Defendants

#### 1.    Section 1983 Claim Against Sheriff Montgomery

Pursuant to 42 U.S.C. § 1983, King proceeds against Sheriff Montgomery in his individual capacity, alleging that he violated her rights to equal protection under the United States Constitution.  King's claim is premised on the same allegations of sexual harassment that comprise her Title VII and ACRA claims, but King expressly states she does not bring a retaliatory discharge claim under § 1983.[5]  (ECF No. 92 at 17, n. 2).

The Court of Appeals for the Eighth Circuit has stated that "[s]exual harassment by state actors violates the Fourteenth Amendment and establishes a section 1983 action."  *Crutcher-Sanchez v. Cnty. of Dakota*, 687 F.3d 979, 985 (8th Cir. 2012).  Because King's Title VII and Section 1983 claims "parallel, substantially identical, legal theories of recovery," the Court applies the same analysis to each claim.  *Humphries v. Pulaski County Special Sch. Dist.*, 580 F.3d 688, 692, n.3 (8th Cir. 2009) (addressing Title VII and Section 1983 claims together and applying same standards).

In Count III of her First Amended Complaint, King alleges that Goode subjected her to discriminatory conduct—unwelcome sexual advances, assault, and harassment—that were based on sex and affected a term, condition, or privilege of employment.  (ECF No. 28 at 5-6).  She further alleges that she was subjected to this behavior while working for Goode and Sheriff

---

5 "The right to be free from retaliation is clearly established as a *first amendment* right and as a statutory right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation."  *Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1237 (8th Cir 2013) (reversing denial of qualified immunity on basis of retaliatory discharge claim premised on equal protection guarantee).

Montgomery, who were acting under the color of state law. (*Id.*). Sheriff Montgomery asserts that he is entitled to judgment as a matter of law on this claim because King has failed to demonstrate that he engaged in the unconstitutional conduct she alleges, namely, hostile environment sexual harassment. Sheriff Montgomery refers to King's First Amended Complaint, noting that it alleges that the actions of Sheriff Montgomery "*through [his] agents* are in violation of Plaintiff's right to equal protection as provided by the U.S. Constitution." (*Id.*, ¶ 35) (emphasis added). Given those allegations, Sheriff Montgomery asserts that his potential liability is foreclosed because state actors cannot be held liable under a theory of *respondeat superior* under Section 1983. (ECF No. 79 at 24).

In response, King reiterates that Goode subjected her to "unwanted photographs ..., sexual advances, and sexual assault," and states that she "was terminated by Sheriff Montgomery as the final adverse action nail in the coffin." (ECF No. 92 at 16). She concludes that Sheriff Montgomery, "as the supervisor making the determination to terminate her pretextually [is] individually liable to the Plaintiff under Sec. 1983." (*Id.*). This is simply a reiteration of King's claim of retaliatory discharge, and the Court has already ruled that King failed to chin the summary judgment bar on her claim that Sheriff Montgomery acted with discriminatory animus when he terminated her. Moreover, King has expressly waived a retaliatory discharge claim under Section 1983. (ECF No. 92 at 17, n. 2).

To the extent King also argues that Sheriff Montgomery is vicariously liable for Goode's harassing conduct because he was Goode's supervisor, the Court agrees with Sheriff Montgomery that such *respondeat superior* liability is foreclosed. Assuming King's allegations of harassment by Goode are true, the allegations present nothing more than an attempt to improperly impose *respondeat superior* liability on Sheriff Montgomery, who has not been shown to have had a direct

role in the alleged sexually harassing conduct. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978) (finding that Section 1983 liability may not be based on *respondeat superior*, but only on the supervisor's own wrongful acts or omissions). Supervisory liability must be based on more than the right to control employees. *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone Cnty Jail*, 602 F.3d 920, 928 (8th Cir. 2010). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)). That Sheriff Montgomery learned of rumors concerning the exchange of inappropriate photographs between Goode and King in 2019, and addressed the matter with Goode—thus, ending the exchanges—does not demonstrate a basis for Sheriff Montgomery's liability as Goode's supervisor. "[S]imple awareness of employees' misconduct does not lead to supervisory liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). As a matter of law, King is not entitled to Section 1983 relief under a *respondeat superior* theory of liability, and Sheriff Montgomery's motion for summary judgment is granted on this claim.

### 2.   Section 1983 Claim Against Goode

King also proceeds against Goode in his individual capacity, pursuant to 42 U.S.C. § 1983, alleging that Goode violated her right to equal protection under the United States Constitution. (ECF No. 28 at 5-6).

To establish a violation of § 1983, a plaintiff must show the deprivation of (1) a right secured by the Constitution and laws of the United States, that was (2) caused by a person or persons acting under the color of state law. *Tipler v. Douglas Cnty., Neb.*, 482 F.3d 1023, 1027

(8th Cir. 2007).  Jail and prison authorities are clearly persons acting under the color of state law. *Thomas v. Gunter*, 32 F.3d 1258, 1259 (8th Cir. 1994).

King's claim is premised on the same allegations of sexual harassment that comprise her Title VII and ACRA claims, but again, King expressly states she does not bring a retaliatory discharge claim under § 1983.  (ECF No. 92 at 17, n. 2).  As previously noted, the analysis for this claim is like the analysis for King's Title VII claim, and Goode's motion for summary judgment proceeds along the same lines as Baxter County's.

Goode says he is entitled to summary judgment because King cannot demonstrate prongs two through four of a hostile-environment claim: that she was subjected to unwelcome harassment; that the harassment was based on sex; and that it affected a term, condition, or privilege of her employment.  *Duncan v. Gen'l Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002).  Goode argues that King cannot demonstrate that his conduct was unwelcome because she did not contemporaneously complain about the alleged harassment; that her claim of assault is supported only by her self-serving and unsubstantiated allegations and testimony; and that the exchange of text messages and photographs were isolated incidents that do not demonstrate a level of severity or pervasiveness to alter the conditions of employment.  For the reasons discussed in the analysis of King's Title VII claim, *supra*, Goode cannot demonstrate the absence of a genuine dispute of material fact as to the second prong, "unwelcome conduct," or the fourth prong, "severe or pervasive harassment."   Concerning the third prong, "[w]ithout question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex."  *Meritor*, 477 U.S. at 64.  Goode's argument in support of summary judgment, like Baxter County's, largely concerns the weight and credibility of the evidence, which this Court may not decide on summary judgment.  *See Great Plains Real Estate Dev., L.L.C.*, 536 F.3d at 944

("In considering a motion for summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern, or attempt to discern the truth of any factual issue."). Accordingly, Goode's motion for summary judgment on this claim must be denied.

### 3. Tort of Outrage; Civil Action by Crime Victim Against Goode

Goode asserts that King's claim for the tort of outrage fails as a matter of law because the evidence does not demonstrate that Goode's conduct was sufficiently severe to be considered "extreme and outrageous," which is a question of law. *Doe v. Wright*, 82 F.3d 265, 269 (8th Cir. 1996). In Arkansas, a claim of outrage requires proof of four elements:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme, outrageous, and utterly intolerable in a civil community; (3) the actions of the defendant were the cause of the plaintiff's anguish or distress; and, (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person should be expected to endure it.

*See Rorie v. United Parcel Service, Inc.*, 151 F.3d 757, 762 (8th Cir.1998). Goode notes that Arkansas courts take "a narrow view" of claims for outrage, especially in the employment context. (ECF No. 76 at 23) (citing *Doe*, 82 F.3d at 269). He asserts that King has produced 10 text messages, only three of which contain sexual content, and the employment related actions he is alleged to have taken were legitimate, non-retaliatory matters which do not amount to outrageous conduct. Finally, he asserts that the allegations of sexual assault should be disregarded because there is no corroborating evidence for it other than King's deposition testimony, which he contends is self-serving. (ECF No. 76 at 23-25).

The Court, however, is not free to simply disregard King's allegations and testimony, despite their inconsistency. King has presented evidence of unwanted touching, kissing, texts, and photographs, as well as allegations of sexual assault, all of which "fall far short of what is acceptable in a civilized society." *Adcock v. St. Jean Indus., Inc.*, No. 4:21-CV-669-DPM, 2022

WL 758300, at *4 (E.D. Ark. Mar. 11, 2022). "Arkansas law makes it difficult to prevail on an outrage claim in the employment context, but [King] has provide a sufficient record for the claim to go forward." *Id*. (deeming evidence of supervisor's threats of termination, daily unwanted touching, kissing, threatening sexual assault in the manufacturing oven, and refusing to give plaintiff a raise because of her hair style sufficient for claim of outrage to withstand summary judgment).

Goode asserts that the same reasons also support summary judgment on King's claim under Ark. Code Ann. § 16-118-107. The statute provides a civil cause of action to a person who has been injured by another person's felonious conduct. King has alleged Goode's conduct violated criminal statutes for the felonious crimes of sexual assault in the second degree or rape. (ECF No. 28 at 7-8). Goode asserts King cannot present credible, competent, admissible testimony regarding any sexual assault. Under both State and federal law, an alleged victim's testimony alone, if believed, may be sufficient to sustain even a criminal conviction. *See Gibbs v. Kemna*, 192 F.3d 1173, 1176 (8th Cir.1999) (the testimony of any one of the eyewitnesses, if believed by the jury, would be sufficient to support a verdict of guilt); *Bryant v. State*, 2010 Ark. 7, 8, 377 S.W.3d 152, 158 (2010) (victim's testimony need not be corroborated to demonstrate sufficient evidence of sexual abuse); *Brown v. State*, 374 Ark. 341, 343, 288 S.W.3d 226, 228 (2008) (a rape victim's testimony may constitute substantial evidence to sustain a conviction of rape). Issues concerning the credibility of King's testimony and the weight of the evidence are matters for the trier of fact. The Court, therefore, denies summary judgment on King's claims against Goode, in his individual capacity, for the tort of outrage and as a victim of felonious conduct.

###### D.   Declaratory Judgment

Baxter County seeks summary judgment on King's claims for declaratory relief.  (ECF No. 79 at 33-35).   King seeks declarations that (1) Arkansas's statutory tort immunity for municipalities, codified in Ark. Code Ann. § 21-9-301, and (2) Arkansas's statutory limits on damages recoverable under the ACRA, Ark. Code Ann. § 16-123-107(c)(2), contravene Article 2, § 13[6], and Article 5, § 32[7] of the Arkansas Constitution.

As an initial matter, the Court notes that it cannot grant the requested declaratory relief because King has not provided notice to the Arkansas Attorney General as required by Rule 5.1 of the Federal Rules of Civil Procedure.  Under this rule, a party who files a pleading questioning the constitutionality of a state statute must promptly file a notice of constitutional question stating the question and identifying the paper that raises it and must serve the notice and paper on the state attorney general either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.  Fed. R. Civ. P. 5.1(a)(1)(B)(2).  The purpose of the filing-and-service requirement is to trigger the certification process and provide the attorney

---

6 Article 2, § 13 of the Arkansas Constitution provides as follows:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase, completely, and without denial, promptly, and without delay, conformably to the laws.

7 Article 5, § 32 of the Arkansas Constitution, as modified by Amendment 26, provides:

> The General Assembly shall have power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made.  It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same.  Provided, that otherwise no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted.

general with an opportunity to intervene within 60 days and defend the challenged statute.  *See* Fed. R. Civ. P. 5.1(c).

Because this matter is set for trial in less than 60 days, there is insufficient time for King to cure her noncompliance absent a stay of the proceedings.  The Court will not delay the proceedings for that purpose, however, because it concludes that King's statutory challenges must be denied.  The 2006 Advisory Committee Notes to Rule 5.1 provide that "[t]he court may reject a constitutional challenge to a statute at any time.  But the court may not enter a final judgment holding a statute unconstitutional before the attorney general has responded or the [60-day] intervention period has expired without response."  Fed. R. Civ. P. 5.1, Advisory Committee's Note to 2006 amendment.

Regarding King's challenge to Ark. Code Ann. § 21-9-301, the Arkansas Supreme Court has held that the statute is consistent with the same Arkansas constitutional provisions to which King points.  *See White v. City of Newport*, 326 Ark. 667, 672, 933 S.W.3d 800, 803 (1996) (holding that § 21-9-301 is a "reasonable means of achieving a permissible public-policy objective" and "[t]herefore, … does not violated Article 2, § 13, or Article 5, § 32, of the Arkansas Constitution[ ]").  *See also Benton Sch. Dist. v. Greer*, 2023 Ark. 160 (holding that "section 21-9-301 immunity, subject to the insurance exception, applies to claims arising under the Arkansas Civil Rights Act[ ]").  Citing *Bd. of Trustees of Univ. of Ark. v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616 (2018), King asks this Court to declare that *White* was incorrectly decided.  She points to dicta in *Andrews* to the effect that the Arkansas General Assembly does not have the power to override a constitutional provision.  *Andrews*, 2018 Ark. 12, at 11, 535 S.W.3d at 622.

The Eighth Circuit Court of Appeals recently considered the same argument in *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 727-28 (8th Cir. 2019) and rejected it.  Doe brought an action

36

against the school district under Title IX and 42 U.S.C. § 1983, alleging that she had been sexually assaulted by a fellow student and the district's deliberate indifference caused discrimination under Title IX.  The district court denied Doe's motion to amend her petition to add a claim that, considering *Andrews*, *White* was wrongly decided, and § 21-9-301 violates the Arkansas Constitution.  The district court denied Doe's motion, finding that raising the claim would be futile, and the Court of Appeals affirmed.  The Eighth Circuit distinguished *Andrews*, noting that it involved sovereign immunity, not tort immunity for counties under § 21-9-301, and the Court saw "no reason why [*Andrews's*] dicta affects the holding in *White*."  928 F.3d at 728.  Applying *Doe*, the Court concludes that King has not demonstrated that § 21-9-301 is unconstitutional, and summary judgment will be granted on this claim for declaratory relief.

For similar reasons, the Court rejects King's challenge to the limits on damages in Ark. Code Ann. § 16-123-107(c)(2).  A presumption of validity attends every consideration of a statute's constitutionality.  *Bayer v. CropScience LP v. Schafer*, 2011 Ark. 518, at 9, 385 S.W.3d 822, 829. Before an act may be held unconstitutional, the incompatibility between it and the constitution must be clear.  *Id*.  Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality, and the heavy burden of demonstrating the unconstitutionality is upon the one attacking it.  *Id*.

As Baxter County notes, the plain language of Article 5, § 32 provides the Arkansas General Assembly with the power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees.  The Arkansas Supreme Court has repeatedly noted this authority extends to limitations on the amount of recovery available where there is an employer-employee relationship.  *See Stapleton v. M.D. Limbaugh Const. Co.*, 333 Ark. 381, 391-92, 969 S.W.2d 648, 652-53 (1998) (discussing cases).  King provides no authority or argument

37

demonstrating why § 16-123-107(c)(2) contravenes the plain language of Article 5, § 32 of the Arkansas Constitution.  She simply notes that Arkansas courts have not yet considered the specific question of whether the statute does so.  Absent any convincing rationale for why the statute should be deemed to contravene the Arkansas constitution, the Court concludes that King has not overcome the presumption of constitutionality that attends the statute under state law.  *See Roberts v. State*, 324 Ark. 68, 71, 919 S.W.2d 192, 194 (1996) (presumption of constitutionality applied absent litigant's explanation of how alleged omission in statutory enactment offended due process or how statutory classification offended equal protection guarantee).  Moreover, the Court cannot grant declaratory relief for the challenge to Ark. Code Ann. § 16-123-107(c)(2) for the additional reason that it is premature.  *See Southern Farm Bureau Cas. Ins. Co. v. Easter*, 374 Ark. 238, 242 n. 2, 287 S.W.3d 537, 540 n. 2 (2008) (affirming dismissal without prejudice of claim for declaratory relief, as premature, where insurer sought declaration regarding duty to pay punitive damages while litigation was pending).  Summary judgment will be granted on this claim for declaratory relief.

## V.  CONCLUSION

For the reasons and upon the authorities discussed above, Defendant Goode's Motion for Summary Judgment (ECF No. 75) and the Separate Defendants' Motion for Summary Judgment (ECF No. 78) are **DENIED in PART** and **GRANTED in PART** as follows:

Summary judgment is **DENIED** on the following claims, and they will proceed to trial:

(1)     King's Title VII and ACRA claims against Baxter County for gender discrimination based on a hostile work environment.

(2)     King's Section 1983 claim against Goode, in his individual capacity, for gender discrimination based on a hostile work environment.

(3)     King's state-law claim against Goode, in his individual capacity, for the tort of outrage.

      (4)    King's state-law claim against Goode, in his individual capacity, for commission of a criminal act.

      Summary judgment is **GRANTED** on the following claims, and they will be DISMISSED

WITH PREJUDICE:

      (1)    King's Title VII and ACRA claims against Baxter County for retaliation.

      (2)    King's state-law claims against Baxter County and Sheriff Montgomery for negligent entrustment.

      (3)    King's Section 1983 claim against Sheriff Montgomery for gender discrimination based on a hostile work environment.

      (4)    King's claims for declaratory relief on the constitutionality of Ark. Code Ann. §§ 21-9-301 and 16-123-107(c)(2).

      King has expressly waived the following claims, and they will be DISMISSED WITH

PREJUDICE:

      (1)    King's state-law claims against Baxter County and Sheriff Montgomery for the tort of outrage.

      (2)    King's state-law claim against Baxter County and Sheriff Montgomery for commission of a criminal act.

      (3)    King's Title VII and ACRA claims of retaliation against Sheriff Montgomery and Goode, in their individual capacities.

      (4)    King's Section 1983 claims of retaliation against Sheriff Montgomery and Goode.

      Finally, on King's request, Does 1-10 are dismissed from the case.

      IT IS SO ORDERED on this 12th day of February 2024.

                      /s/ Mark E. Ford
                      HON. MARK E. FORD
                      UNITED STATES MAGISTRATE JUDGE